### SALLIE STONE ET AL. v. J. W. STITT, TRUSTEE.

#### Decided October 29, 1910.

**1.—Debtor and Creditor—Resulting Trust—Basis of Credit—Estoppel.**

In the absence of evidence tending to show that the equitable owner of land knew that the title to certain property, which had been bought with her separate funds, was in the name of a certain merchant and not in her own name, or that said merchant was using the same as a basis of credit; and in the absence of evidence that any credit had in fact been extended to said merchant by reason of his apparent ownership of said land, it was reversible error for the trial court to permit the introduction in evidence of a statement by said merchant of his assets, including the land in controversy, as a basis of credit and in submitting to the jury the issue of estoppel as against the equitable owner.

**2.—Same—Execution of Trust—Prior Right.**

Where the holder of the legal title to land conveys the same to the equitable owner in compliance with his promise so to do, before the creditors of the former acquire any lien upon or interest in the land, such creditors can not set side the conveyance in the absence of acts and facts which would estop the equitable owner.

**3.—Evidence—Ex parte Statement of Bankrupt.**

The ex parte statements of a bankrupt before a referee in bankruptcy are not admissible in evidence against one claiming title to a part of the bankrupt estate.

Appeal from the District Court of Deaf Smith County. Tried below before Hon. D. B. Hill.

*W. R. McGill* and *Barcus & North,* for appellants.—An ex parte statement made by a party in a bankruptcy proceeding can not be used in a subsequent case against a co-defendant in such case who was not a party in such bankruptcy proceedings. Bracken v. Neill, 15 Texas, 114; Behan v. Long, 30 S. W., 380; Ellis v. Le Bow, 71 S. W., 576.

No evidence was offered attempting to show that W. H. Stone had used the property as a basis of credit or that any credit had ever been extended to him by reason of the fact that the property was in his name, or that Mrs. Stone knew the property was in W. H. Stone's name, and the court erred in submitting that issue to the jury, because no evidence was offered in support of same that would support a judgment. Waxahachie Natl. Bank v. Beilharz, 62 S. W., 743; Grigsby v. Peak, 57 Texas, 151; Grigsby

v. Caruth, 57 Texas, 269; Thomas v. Groesbeck, 40 Texas, 536; Belton C. Co. v. Belton Brick Mfg. Co., 64 Texas, 339.

*N. J. Wade* and *Carl Gilliland,* for appellee.

CONNER, CHIEF JUSTICE.—This suit was instituted by J. W. Stitt · as trustee in bankruptcy of Will H. Stone to set aside a deed made by the latter to his mother, Mrs. Sallie Stone, on the 14th day of March, 1903, conveying certain lots in the town of Hereford. Appellee alleged that the transfer was fraudulent in that it had been made with intent to defraud the creditors of the said Will H. Stone, and he prayed for cancellation of the conveyance. A more complete statement may be found in the opinions· on two former appeals in this case. (See 47 Texas Civ. App., 93 (103 S. W., 1192), and 121 S. W., 188.)

On the last trial Mrs. Sallie Stone pleaded, among other things, that the lots in controversy had been purchased with her separate money; that they were and ever had been of right her property although the deeds had been taken in the name of Will H. Stone; that as soon as she ascertained the fact that the title stood in the name of Will H. Stone, she procured the execution of the conveyance in controversy in discharge of the trust under which Will H. Stone had held the legal title.

By a second trial amendment filed after the case had gone to trial, appellee specially pleaded that "during the time the title was still in the name of Will H. Stone, the said Will H. .Stone was engaged in the mercantile business in the city of Hereford and the claims of creditors represented by plaintiff were contracted on the credit and financial standing of the said Will H. Stone; that the said Sallie Stone should not be heard on her plea of resulting trust because plaintiff says that if, as alleged by her, the said lots were purchased and paid for by her out of her separate means, that she had full knowledge and notice of the record and legal title standing in the name of said Will H. Stone, and suffered and permitted this condition of the title to remain unchanged. That said W. H. Stone was thereby permitted and enabled to represent to his creditors, and did represent to them, that the said property is owned by him whereby he obtained large sums of credit, and the defendant Sallie Stone is now estopped from asserting in her said second amended answer her claims of resulting trust."

The case was tried before a jury and resulted in a verdict and judgment in appellee's favor cancelling the deed mentioned and investing the title to the property in appellee.

We regret that we have found ourselves unable to terminate the long continued litigation between the parties to this suit, but, as desirable as it may be that this shall be done, we think we must again reverse the judgment.

On the issue of estoppel above noted the court permitted appellee over the objection of appellants to read in evidence a written statement made by Will H. Stone on November 6, 1902, to the Tootle, Wheeler &

Motter Mercantile Company. The statement was made as a basis of credit and included references relating to the lots in controversy in this suit, and the court thus submitted the issue:

"12th. If you find and believe from the evidence that if Sallie Stone furnished the money to purchase the lots in question in this case, and that the conveyances were made to Will H. Stone, he would be deemed in law to hold said property in trust for said Sallie Stone; but if Sallie Stone knew that said property had been conveyed to W. H. Stone and if while said property was in the name of W. H. Stone he used said property as a basis of credit, and represented to his creditors, who are represented by the plaintiff in this case, that he was the owner of said property and that the same was liable for his debts, and by such representation and means the said Will H. Stone did so use said property and so obtained credit, and if his said creditors relied upon said representations so made and were induced by said representations to extend credit to said W. H. Stone and to sell and furnish him merchandise on credit; and if you further find and believe from the evidence that Sallie Stone knew that W. H. Stone was so using said property as a basis of credit and that he was inducing said creditors to sell him goods on a credit, then she would be estopped from and precluded thereby from asserting her claim to said property as against such creditors above mentioned; and if you so find and believe, your verdict should be for the plaintiff, and if you fail to so find and believe from the evidence, you will return a verdict for the defendant."

Appellee refers us to no other evidence in support of the plea or that contradicts appellant's statement, as it appears in the brief, that no credit in fact had ever been extended by reason of the statement of Will H. Stone above mentioned. Nor is any evidence pointed out tending to show that Mrs. Sallie Stone either directed or knew of the making of the statement, or that at the time of its making knew that the title to the property in question stood in the name of Will H. Stone, in view of all which it was certainly erroneous to either admit the statement or to submit the issue of estoppel.

The case of Bicocchi v. Casey-Swasey Co., 91 Texas, 259, presents a similar question. The Casey-Swasey Co. and others sold certain goods to one Mazza upon the faith of representations made by Mazza that he owned certain real property in fact held by him in trust for Bicocchi. Later, Mazza conveyed the property, as he had theretofore agreed to do, to Bicocchi, after which the Casey-Swasey Company and another creditor of Mazza instituted suits and recovered judgments, among other things, foreclosing attachment liens levied upon the property. In a suit by Bicocchi to remove the cloud cast upon his title by the judgments, our Supreme Court, after a review of the authorities, said:

"We conclude that the correct rule, and that which is supported by authority and sound reasoning, is that, when the fraudulent grantee has in compliance with his verbal agreement made a reconveyance of the property to the fraudulent grantor, the moral obligation under which he

placed himself to make this reconveyance is a valuable and sufficient consideration to support the deed of reconveyance. While the legal title to the property remained in Mazza, his creditors might have subjected it to the payment of their debts, and if they had taken proceedings by which they fixed a lien upon the property before the conveyance was made, their rights would be superior to those of Bicocchi; but having failed to secure any right in the property itself before the conveyance was made, they can not now reach it in the hands of Bicocchi, because his right to have the property reconveyed was equally binding as were the rights of the creditors of Mazza to have their debts paid; and Mazza having conveyed the property in satisfaction of a promise to do so, that conveyance must be held to be good against the debts of the defendants in error." See, also, Matador Land & Cattle Co., Ltd., v. Cooper et al., 39 Texas Civ. App., 99.

Appellant Sallie Stone's testimony tended to support her plea that the property in question had been purchased with her separate money and that the title was held by her son, Will H. Stone, in trust. Its reconveyance to her occurred before any right to the property on the part of appellee, or of any creditor represented by him, had attached, and to now divest her of the title on the ground of the estoppel pleaded, it must certainly at least appear that she knew of Will H. Stone's representations of ownership; that she knew Will H. Stone's assertions of owner-. ship had been made for the purpose of securing credit, and that in fact credit had been extended by reason of such representations. In other words, it should appear that Sallie Stone was either guilty of, or knowingly permitted, some representation or concealment in relation to the title of the property, which was intended to cause another to alter his position or condition and which actually had such effect. We conclude that for the error of the court above discussed the judgment must be reversed and the cause remanded.

In view of another trial, however, we wish to say that we fail to find any supporting reason for the introduction in evidence, which was permitted over the objection of appellants, of the testimony of Will H. Stone taken before the referee in bankruptcy in Fort Worth, Texas, on January 25, 1904. We will not undertake to set out this testimony, but it contained numerous statements prejudicial to Sallie Stone. The testimony of a witness, duly sworn, may be heard either orally or by the familiar way of deposition after opportunity has been afforded parties to cross-examine, but we know of no precedent for the admission of this ex parte deposition of the bankrupt unless, indeed, by way of impeachment, which is not pretended here. Other assignments of error are presented, but the questions are not likely to arise upon another trial and we forbear discussion. Judgment reversed and the cause remanded.

*Reversed and remanded.*